IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BO STEFFEN ANDERSEN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-2667 |
| | § | |
| JOE SMITH, Warden, | § | |
| Joe Corley Detention Facility, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

The petitioner, Bo Steffen Andersen, is currently in federal custody at the Joe Corley Detention Facility in Conroe, Texas. Andersen seeks a writ of habeas corpus under 28 U.S.C. § 2241 to challenge his continued imprisonment pursuant to a provisional arrest warrant requested by the Kingdom of Denmark to obtain his extradition. After considering the pleadings, and the applicable law, the Court denies the petition and dismisses this case for reasons set forth below.

**I.   BACKGROUND**

Court records from the underlying extradition case show that Andersen was arrested pursuant to a provisional warrant that issued from the Southern District of Texas, Houston Division, on June 14, 2011. *See In the Matter of the Extradition of Bo Steffen Andersen*, Magistrate No. H-11-673-M (S.D. Tex.). The pleadings reflect that Andersen is a fugitive the Kingdom of Denmark, where he has been charged with "[e]mbezzlement of a particularly serious nature" in violation of Sections 278(a)(3) and 262(2) of the Criminal Code. The

embezzlement reportedly occurred between September 1, 2005, and August 7, 2006, in Denmark. When the embezzlement was discovered in 2007, Andersen relocated to Spain, and then to Germany, before returning to Denmark, where he was indicted and charged with embezzlement in 2008. That same year, Andersen married a United States citizen, who he met over the Internet. In 2009, shortly before Andersen's embezzlement trial was about to begin, Andersen and his wife moved to Pasadena, which is near Houston, Texas. After Andersen failed to appear at his trial, Danish authorities issued a warrant for his arrest in 2010.

Eventually, Andersen was located in Texas, where he was taken into custody on June 15, 2011. Andersen appeared with counsel for a detention hearing on June 17, 2011, where he requested bond. The presiding magistrate judge denied that request and ordered Andersen held without bond pending a hearing on Denmark's request for extradition. Andersen notes that, under the treaty that governs extradition between the United States and Denmark, the government had only thirty days to make a formal request for his extradition, which expired on July 15, 2011.[1] To date, a formal request for extradition has not been made in Andersen's case.

Andersen alleges that, at the detention hearing held on June 17, 2011, the magistrate judge granted the government an extension of time until July 27, 2011, to present formal

---

[1] *See* Treaty on Extradition Between the United States of America and the Kingdom of Denmark, art. 12, June 22, 1972, 25 U.S.T. 1293. There is also an extradition treaty in force between the United States and the European Union, of which Denmark is a member. *See* Agreement with the European Union, U.S.–E.U., June 23, 2003, S. Treaty Doc. No. 109-14 (2006).

documents in support of Denmark's request for extradition. On July 14, 2011, the government filed a motion for a thirty-day extension of time so that it could secure "formal certifications through diplomatic components of the Kingdom of Denmark and the United States," as required by the extradition treaty. Andersen filed a response, objecting to the government's request and his extended incarceration. On July 15, 2011, the magistrate judge granted the requested extension of time to allow the government to submit the "final formal request for extradition." Magistrate No. H-11-673-M (S.D. Tex.) [Doc. # 10]. The terms of the order expressly provide that the extension "shall expire on August 14, 2011."[2] *Id.* Andersen's extradition hearing is currently set to occur on August 12, 2011.

Andersen now seeks a writ of habeas corpus under 28 U.S.C. § 2241 to challenge his continued detention. Andersen does not challenge the provisional warrant or the validity of his arrest. Nor does Andersen challenge the magistrate judge's decision to deny him release on bond. Andersen's primary complaint is that the magistrate judge's decision on July 15, 2011, which granted a second extension of the deadline to make a formal extradition request, was "not permitted" by the governing extradition treaty. Arguing that this extension of time was unauthorized, Andersen insists that he is entitled to his immediate release from custody. The Court concludes, however, that the petition must be dismissed for reasons discussed further below.

## II.   STANDARD OF REVIEW

---

[2]   Andersen's habeas corpus petition erroneously states that the deadline was extended "until 15 August 2011." [Doc. # 1, at 1]. The extension of time, however, is plainly set to "expire on August 14, 2011." Magistrate No. H-11-673-M [Doc. # 10].

Historically, the federal writ of habeas corpus has been regarded as an extraordinary remedy to secure freedom from unlawful restraint. *See Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993); *see also Boumediene v. Bush*, 553 U.S. 723, 739 (2009) (noting that "[t]he Framers viewed freedom from unlawful restraint as a fundamental precept of liberty," and tracing the origins of the common-law writ of habeas corpus "as a vital instrument to secure that freedom"). By Act of Congress, the writ of habeas corpus is available to any imprisoned individual who can demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The petitioner in this case claims that he is in custody in violation of an extradition treaty between the United States and Denmark.

"Extradition is an executive function derived from the President's power to conduct foreign affairs, and the judiciary historically has played a limited role in extradition proceedings." *Noriega v. Pastrana*, 564 F.3d 1290, 1294 (11th Cir. 2009) (citing *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 828 & n. 6 (11th Cir. 1993)). The scope of habeas review is "extremely limited" in the extradition context. *Ntakirutimana v. Reno*, 184 F.3d 419, 423 (5th Cir. 1999) (citing *Garcia-Guillern v. United States*, 450 F.2d 1189, 1191 (5th Cir. 1971)). Typically, a reviewing court inquires only into "(1) whether the committing court had jurisdiction, (2) whether the offense charged is within the treaty, and (3) whether the evidence shows a reasonable ground to believe the accused guilty." *Ntakirutimana*, 184 F.3d at 423 (citing *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) (citation and internal footnote omitted)). The Fifth Circuit has applied this standard of review to decisions made

during an extradition hearing as well as to decisions regarding "pre-hearing provisional detention." *Matter of Extradition of Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986). The petitioner's claims concerning the validity of his continued pre-hearing detention are considered below under this limited scope of review.

## III. DISCUSSION

As outlined above, Andersen contends that he is unlawfully confined and therefore entitled to a writ of habeas corpus under 28 U.S.C. § 2241 because the magistrate judge improperly granted a second extension of time on July 15, 2011, extending the government's deadline to present Denmark's formal extradition request until August 14, 2011. Andersen does not clearly show that habeas corpus review is available to challenge this type of decision, in which the magistrate judge implicitly found that the requested extension of time was authorized and appropriate. The writ of habeas corpus is, above all, an extraordinary remedy and review in the extradition context is extremely narrow. *See, e.g., Ntakirutimana*, 184 F.3d at 424 ("A writ of habeas corpus in a case of extradition is not a means for rehearing the findings of the committing court."). Assuming that jurisdiction exists, Andersen does not demonstrate that the disputed extension of time was unauthorized or that he has been detained unlawfully for reasons that follow.

The government secured Andersen's provisional arrest pursuant to Article 12 of the Treaty on Extradition Between the United States of America and the Kingdom of Denmark, pending a formal request for extradition through the diplomatic process:

> In case of urgency a Contracting State may apply for the provisional arrest of the person sought pending the presentation of the request for extradition

> through the diplomatic channel. This application may be made either through the diplomatic channel or directly between the United States Department of Justice and the Danish Ministry of Justice. The application shall contain a description of the person sought, an indication of intention to request the extradition of the person sought and a statement of the existence of a warrant of arrest or, if convicted and sentenced, a judgment of conviction against that person, and such further information, if any, as would be necessary to justify the issue of a warrant of arrest had the offense been committed, or the person sought been convicted, in the territory of the requested State.
>
> On receipt of such an application the requested State shall take the necessary steps to secure the arrest of the person claimed.

Article 12, U.S.–Den., June 22, 1972, 25 U.S.T. 1293. Andersen does not challenge the manner in which he was arrested pursuant to the provisional warrant or the application of this portion of Article 12. Rather, Andersen claims that he is entitled to immediate release because the government has not presented its formal application or the requisite documentation within the time allowed by the treaty.

In support of his argument, Andersen points to the following portion of Article 12, which mandates release within 30 days of the provisional arrest unless the "requesting State" obtains an extension:

> A person arrested upon such an application may be set at liberty upon the expiration of thirty days from the date of his arrest if a request for his extradition accompanied by the documents specified in Article 11 shall not have been received. *The requesting State may request, specifying the reasons therefor, an extension of the period of detention for a period not to exceed thirty days, and the appropriate judicial authority of the requested State shall have the authority to extend the period of detention.* The release from custody pursuant to this provision shall not prevent the institution of proceedings with a view to extraditing the person sought if the request is subsequently received.

6

*Id*. (emphasis added).³ Andersen contends that the United States had until July 15, 2011, to present Denmark's formal request for extradition. He insists that, by extending the deadline until August 14, 2011, the magistrate judge violated Article 12 and, therefore, he is entitled to a writ of habeas corpus to effect his prompt release. The Court disagrees.

According to the chronology of the extradition case, Andersen was taken into custody pursuant to the provisional warrant on June 15, 2011, giving the United States until July 15, 2011 to present Denmark's formal request for extradition. Although the extradition hearing was initially delayed until July 27, 2011, the magistrate judge ultimately extended the deadline to make this formal request until August 14, 2011. The extradition hearing is scheduled to take place on August 12, 2011. Because the scheduled extradition hearing is within the extended deadline established by the magistrate judge and the 30-day limit on extensions found in Article 12, Andersen fails to show that the extension of time was

---

3   The documents specified in Article 11 of the Treaty on Extradition Between the United States and Denmark include: "a description of the person sought, information as to his nationality and residence if available, a statement of the facts of the case, the text of the applicable laws of the requesting State including the law defining the offense, the law prescribing the punishment for the offense, and a statement that the legal proceedings or the enforcement of the penalty for the offense have not been barred by lapse of time." Where, as here, the person sought for extradition "has not yet been convicted" of the charged offense, the request for extradition "must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting State and by such evidence as, according to the laws of the requested State, would justify his arrest and committal for trial if the offense has been committed there, including evidence proving the person requested is the person to whom the warrant of arrest refers. *Id.* These documents must "bear the signature of [be] accompanied by the attestation of a judge, magistrate or other official or [be] authenticated by the official seal of the Ministry of Justice and, in any case, [be] certified by the principal diplomatic or consular officer of the United States in Denmark[.]" *Id.*

unauthorized or that his continued detention is unlawful.[4]

Andersen argues, nevertheless, that the second extension of time granted by the magistrate judge is invalid because the express terms of Article 12 contemplate only "an extension." Andersen construes this to mean that the government was entitled to a singular extension of time, rather than two, even if the total amount of the combined extensions did not exceed the 30-day limit. As a general matter, treaty obligations are not subject to so narrow an interpretation. "It is a familiar rule that the obligations of treaties should be liberally construed so as to give effect to the apparent intention of the parties." *Escobedo v. United States*, 623 F.2d 1098, 1104 (5th Cir. 1980) (quoting *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 10 (1936)). In that respect, extradition treaties are "construed more liberally than a criminal statute or the technical requirements of criminal procedure." *Ludecke v. United States Marshal*, 15 F.3d 496, 498 (quoting *Factor v. Laubenheimer*, 290 U.S. 276, 298-99 (1933) (citation omitted)).

Andersen's objection to the second extension of time, based on his own technical interpretation of Article 12, is not supported by authority or persuasive under the circumstances. Andersen does not establish that the total length of time between his arrest

---

[4] Andersen claims that the United States government had no authority to request the extension of time on Denmark's behalf. This assertion is without merit. The United States initiated the extradition proceeding and secured a provisional arrest warrant for Andersen pursuant to 18 U.S.C. § 3184, which governs the extradition of fugitives from a foreign state, to fulfil a treaty obligation to the Kingdom of Denmark. Andersen also complains that the request for an extension lacked a "specific reason." This argument is refuted by the record of the extradition proceeding. In that respect, the government's motion for extension of time clearly stated that additional time was needed to secure formal certifications from diplomatic authorities. Andersen does not establish that any particular level of detail is required or that the extension was unsupported by adequate cause.

on June 15, 2011, and the extension of time to present Denmark's formal request for extradition, which will expire on August 14, 2011, exceeds 60 days in violation of Article 12. Absent a showing that his the decision at issue violates a Treaty or the laws of the United States, he is not entitled to relief under 28 U.S.C. § 2241 and his petition must be dismissed.[5]

## IV.   CONCLUSION AND ORDER

Accordingly, based on the foregoing, it is **ORDERED** that the petition for a writ of habeas corpus [Doc. # 1] is **DENIED** and this case is **DISMISSED** with prejudice.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on <u>July 29</u>, 2011.

_____
Nancy F. Atlas
United States District Judge

---

[5] Even if a technical violation of Article 12 occurred, Andersen does not demonstrate that he is entitled to relief from extended detention in the form of his release. As one commentator has observed, arrest on a provisional warrant, which necessarily occurs before a full diplomatic request has been formulated, often results in extended detention prior to an extradition hearing. *See* GEOFF GILBERT, TRANSNATIONAL FUGITIVE OFFENDERS IN INTERNATIONAL LAW: EXTRADITION AND OTHER MECHANISMS 75 (1998). It should be noted, however, "that the primary object must be to let the hearing take place so that judicial consideration might be given to the fugitive's extraditability: only in cases of extreme abuse of process should a fugitive be released prior to the hearing if there is a real danger he might flee from the requested State before it can take place." *Id*. Andersen does not establish an extreme abuse of process here.